1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ARTURO GRANADOS-DOMINGUEZ,                      )        Case No. EDCV 07-677 JC
                                                )
                        Plaintiff,              )        MEMORANDUM OPINION
                                                )
            v.                                  )
                                                )
MICHAEL J. ASTRUE,                              )
Commissioner of Social                          )
Security,                                       )
                                                )
                        Defendant.              )
_____                 )

**I.    SUMMARY**

        On June 13, 2007, plaintiff Arturo Granados-Dominguez ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have filed a consent to proceed
before a United States Magistrate Judge.

        This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; October 10, 2007 Case Management Order ¶ 5.

1       Based on the record as a whole and the applicable law, the decision of the

2  Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3  ("ALJ") are supported by substantial evidence and are free from material error.[1]

4  **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5          **DECISION**

6       On September 30, 2003, plaintiff filed applications for Supplemental

7  Security Income and Disability Insurance Benefits.  (Administrative Record

8  ("AR") 13, 54-56).  Plaintiff asserted that he became disabled on January 1, 2000,

9  due to an inability to stand on his leg for a long period of time.  (AR 74).  The ALJ

10  examined the medical record and heard testimony from plaintiff (who was

11  represented by counsel) on April 3, 2006.  (AR 285-308).  At the end of the

12  hearing, the ALJ ordered consultative neurological and psychological

13  examinations for plaintiff and set a further hearing date.  (AR 13, 307).  The ALJ

14  examined the additional evidence and, on July 12, 2006, held a supplemental

15  hearing at which a vocational expert testified.  (AR 309-16).  The ALJ thereafter

16  requested and received further clarification from one of the examining physicians,

17  advised plaintiff that the additional evidence would be part of the record, and

18  afforded plaintiff an opportunity to supplement the record and to seek a further

19  hearing.  (AR 16-17, 108-11).

20       On October 26, 2006, the ALJ determined that plaintiff was not disabled

21  through the date of the decision.  (AR 13-21).  Specifically, the ALJ found:

22  (1) plaintiff suffered from the following severe impairments of the neurological

23  and musculoskeletal system:  (i) history of neurological problems, including

24  weakness and tremor; (ii) a recent diagnosis of cerebral palsy; and

25

26  ───────────────

27       [1]The harmless error rule applies to the review of administrative decisions regarding
    disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196
28  (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
    Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of
    application of harmless error standard in social security cases).

1  (iii) degenerative changes in the lumbar and cervical spine (AR 15-16);

2  (2) plaintiff's impairments, considered singly or in combination, did not meet or

3  medically equal a listed impairment (AR 16); (3) plaintiff retained the residual

4  functional capacity to perform a range of light work (AR 16);[2] (4) plaintiff could

5  not perform his past relevant work (AR 20); and (5) there are jobs that exist in

6  significant numbers in the national economy that plaintiff could perform (AR 20-

7  21).

8         The Appeals Council denied plaintiff's application for review.  (AR 5-7).

9  **III.    APPLICABLE LEGAL STANDARDS**

10        **A.    Sequential Evaluation Process**

11        To qualify for disability benefits, a claimant must show that he is unable to

12 engage in any substantial gainful activity by reason of a medically determinable

13 physical or mental impairment which can be expected to result in death or which

14 has lasted or can be expected to last for a continuous period of at least twelve

15 months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

16 § 423(d)(1)(A)).  The impairment must render the claimant incapable of

17 performing the work he previously performed and incapable of performing any

18 other substantial gainful employment that exists in the national economy.  Tackett

19 v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

20        In assessing whether a claimant is disabled, an ALJ is to follow a five-step

21 sequential evaluation process:

22 ///

23

24        [2]Specifically, the ALJ determined that plaintiff:  (i) could stand and walk two to four
   hours during an eight-hour workday without an assistive device in thirty-minute intervals;
25 (ii) could sit in an unrestricted manner; (iii) could bend and stoop occasionally; (iv) would have
   difficulty operating foot controls; (v) could not climb, balance, or work at unprotected heights;
26 (vi) could occasionally push and pull with his upper extremities; (vii) would have slight difficulty
   operating hand controls and using tools; (viii) could perform occasional to frequent simple
27 gripping movements; (ix) could perform occasional to frequent distal fine coordinated
   movements with his fingers; and (x) could intermittently lift and carry twenty-five pounds and
28 more frequently lift and carry ten pounds.  (AR 16).

(1)     Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2)     Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3)     Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to perform his past relevant work?[3] If so, the claimant is not disabled. If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 954-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal

---

[3]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

4

1   error.  <u>Robbins v. Social Security Administration</u>, 466 F.3d 880, 882 (9th Cir.

2   2006) (citing <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1457

3   (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

4   mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>,

5   402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

6   mere scintilla but less than a preponderance.  <u>Robbins</u>, 466 F.3d at 882 (citing

7   <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990)).

8        To determine whether substantial evidence supports a finding, a court must

9   "'consider the record as a whole, weighing both evidence that supports and

10  evidence that detracts from the [Commissioner's] conclusion.'"  <u>Aukland v.</u>

11  <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d

12  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

13  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

14  of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

15  **IV.   DISCUSSION**

16       **A.   Treating Physician**

17       Plaintiff contends that the ALJ failed properly to consider the opinion of his

18  treating physician, Dr. Deborah Small.  (Plaintiff's Motion at 2-5).  Specifically,

19  plaintiff argues that the ALJ overlooked Dr. Small's March 6, 2006 report in

20  which Dr. Small diagnosed plaintiff with cerebral palsy and noted that plaintiff

21  could not work.  This Court concludes that the ALJ properly considered and

22  addressed the opinions of plaintiff's treating physician, and that a reversal or

23  remand is not warranted on this basis.

24            **1.   Applicable Law**

25       In Social Security cases, courts employ a hierarchy of deference to medical

26  opinions depending on the nature of the services provided.  Courts distinguish

27  among the opinions of three types of physicians:  those who treat the claimant

28  ("treating physicians") and two categories of "nontreating physicians," namely

5

those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[4]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id.  (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite

---

[4]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

1 "magic words" to reject a treating physician opinion – court may draw specific

2 and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer

3 his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He

4 must set forth his own interpretations and explain why they, rather than the

5 [physician's], are correct." Id. "Broad and vague" reasons for rejecting the

6 treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599,

7 602 (9th Cir. 1989).

8                    **2.    Relevant Facts**

9        Between December 15, 2003 and June 19, 2006, plaintiff was treated by Dr.

10 Deborah Small at the Fontana Clinic in the Arrowhead Regional Medical Center.

11 (AR 166-85, 156-82, 246-47). Dr. Small's various diagnoses of plaintiff included:

12 (i) neuromuscular disorder, etiology unspecified or unclear; (ii) progressive

13 ascending neurological dysfunction, etiology unclear; (iii) neural foraminal

14 stenosis, stable; (iv) progressive neuropathy, etiology unclear; (v) cerebral palsy,

15 stable; (v) uncontrolled hypertension; and (vi) erectile dysfunction. (AR 166-85,

16 156-82, 244-47). Dr. Small recommended conservative treatment, such as an

17 increase and/or continuation of medications to control plaintiff's neurologic

18 complaints and follow-up neurology visits. (AR 166-71, 174, 177-79). Dr. Small

19 observed that plaintiff had no difficulty ambulating, his vital signs were stable, he

20 had no extreme weakness, and his cerebral palsy was stable. (AR 167, 174, 178,

21 244-45). Dr. Small noted that plaintiff's neuromuscular disorder was well

22 controlled by medications, such as Baclofen and Neurontin. (AR 166, 170-71,

23 174, 178). Dr. Small also indicated that plaintiff was angry that he was denied

24 disability benefits or was agitated with the process of applying for such benefits.

25 (AR 184-85, 244-45).

26        Dr. Small opined that plaintiff was disabled and could not work, but did not

27 identify any specific functional limitations. (AR 166-85, 187, 156-83, 220, 284,

28 244-47). Dr. Small provided plaintiff with a certificate of disability to receive a

7

permanent placard for transportation purposes.  (AR 187).  In connection therewith, Dr. Small stated that plaintiff "has a diagnosed disease or disorder which substantially impairs or interferes with mobility due to degenerative disc disorder with central casual stenosis."  (AR 187).  Dr. Small also completed a Transitional Assistance Department Medical Report form for plaintiff, indicating that plaintiff was incapacitated possibly permanently, suffered from cerebral palsy, and could perform no work.  (AR 220, 284).

On April 17, 2004, consultative orthopedic surgeon, Dr. Kambiz Hannani, performed a complete orthopedic consultation on plaintiff.  (AR 120-23).  Dr. Hannani observed, among other things:  (i) plaintiff has a difficult time with toe and heel walking, and an slight unsteady gait; (ii) plaintiff was unable to perform straight leg raising in the seated and supine positions bilaterally; (iii) plaintiff's range of motion of the elbows, wrists, hands, fingers, hips, knees, ankles, subtalar joints, tarsal joints and metatarsal joints were within normal limits; (iv) plaintiff's grip strength in both hands was sixty pounds; (iv) plaintiff has normal strength with slight weakness of the bilateral hip flexors; (v) plaintiff has  normal reflexes; and (vi) plaintiff's sensation intact to normal touch throughout both lower and upper extremities.  (AR 121-22).  Dr. Hannani concluded that plaintiff has a neuromuscular dysfunction.  (AR 123).  Dr. Hannani further opined that plaintiff could perform medium work without requiring any assistive devices.  (AR 123); see also 20 C.F.R. §§ 404.1567(c), 416.967(c); SSR 83-10.  However, Dr. Hannani cautioned that plaintiff may progressively worsen if he truly has neuromuscular dysfunction and recommended that a neurological examination or additional laboratory testing be done to confirm such dysfunction.  (AR 123).

On June 16, 2004, plaintiff was treated at the Spine Clinic at the Arrowhead Regional Medical Center. (AR 191).  A clinician opined that plaintiff has multiple sclerosis, multilevel degenerative disc disease, and central canal and neural foraminal stenosis.  (AR 191).  The clinician noted no functional limitations.

On May 15, 2006, consultative psychiatrist and neurologist, Dr. Robert A. Moore, performed a neurological evaluation on plaintiff.  (AR 232-35).  Dr. Moore observed the following regarding plaintiff's coordination:

> There was a moderate decrease in distal fine coordinated movements of the toes and a slight decrease in distal fine coordinated movements of the fingers.  Finger-nose-finger testing was unremarkable.  The claimant performed heel-shin testing somewhat poorly because of spasticity.  There was no dysmetria or transverse tremor.

(AR 233).  As to plaintiff's gait, Dr. Moore observed that plaintiff "exhibited a bit more than a bilateral gait diplegia.  He did not heel, toe or tandem walk."  (AR 234).  Dr. Moore noted that by history, plaintiff has cerebral palsy.  (AR 234).  Dr. Moore further opined:

> At the current time, the claimant is able to stand and walk two to four hours out of an eight-hour day without an assistive device in 30-minute intervals.  He can sit in an unrestricted manner.  He can only occasionally bend and stoop.  He would have difficulty operating foot controls.  He cannot climb, balance or work at unprotected heights. [¶] The claimant can sit in an unrestricted manner.  [¶]  In the upper extremities, there is increased tone, some distal limb incoordination, and mild distal weakness.  The claimant can occasionally push and pull.  He would have slight difficulty operating hand controls and using tools.  He can perform occasional to frequent simple gripping movements.  He can perform occasional to frequent distal fine coordinated movements with the fingers.  [¶]  The claimant can intermittently lift and carry 25 pounds and more frequently lift and carry 10 pounds.  [¶].  The claimant is cognitively intact.

(AR 234-35).
///

9

1   After the July 12, 2006 hearing, the ALJ asked Dr. Moore for further

2   clarification regarding occasional and frequent simple gripping and fine

3   coordination.  (AR 108).  Dr. Moore clarified his opinion as follows:

4       As it relates to further clarification of these terms, if the claimant

5       were required to use gripping for performing activities such as using

6       pliers or screwdrivers, he would be able to do this on an occasional

7       basis, as this would require relatively strong gripping.  On the other

8       hand, the claimant could frequently do such things as handle money,

9       where gripping with full strength would not be required.  As it relates

10      to fine manipulation, the claimant would have difficulty doing such

11      things as word processing, where it would be important to type on a

12      relatively continuous basis.  On the other hand, he would be able to

13      do such things as intermittently operate a mouse or keyboard, where

14      speed is not of the essence.  [¶]  As it relates to a position such as a

15      packager, this might prove difficult to the claimant, as forceful

16      gripping would be required.  On the other hand, he likely would be

17      able to operate a cash register, with a frequency required by a cashier,

18      or do such things as punch out tickets and swipe credit cards, as

19      would be required by a ticket seller or taker.

20  (AR 108).

21      In his decision, the ALJ thoroughly discussed plaintiff's medical record and

22  treatment history.  (AR 17-19).  The ALJ adopted Dr. Moore's assessment of

23  claimant's functional abilities, as being "well-supported by objective findings and

24  generally consistent with the medical record."  (AR 17).  The ALJ found Dr.

25  Moore's assessment to be consistent with the opinion of Dr. Hannani.  However,

26  the ALJ noted that despite the State Agency's [Dr. Hannani's] finding that

27  plaintiff was able to perform a range of medium work and in light of subsequently

28  ///

1    submitted medical records and Dr. Moore's findings, the ALJ found plaintiff
2    limited to a range of light work.  (AR 17).

3                    **3.    Analysis**

4          As noted above, plaintiff contends that the ALJ failed to consider and
5    improperly rejected Dr. Small's medical opinions, specifically a March 6, 2006
6    report in which Dr. Small diagnosed plaintiff with cerebral palsy and opined that
7    plaintiff could not work.  This Court rejects plaintiff's contention because the ALJ
8    properly considered Dr. Small's opinions and set forth a specific, legitimate reason
9    for rejecting her opinion that plaintiff could not work in favor of the contrary
10   opinion of another examining physician, Dr. Moore.

11         In his decision, the ALJ discussed Dr. Small's entire treatment record,
12   including the March 6, 2006 report:

13         The most recent treating notes indicate the claimant has been
14         diagnosed with cerebral palsy and document his anger at being denied
15         disability benefits, but do not reflect any decrease in the claimant's
16         functioning.  (Exhibit 22-F, pp. 1-7 [AR 244-50]; Exhibit 23-F, p.1
17         [AR 284]).[5]  Indeed, his cerebral palsy was noted to be stable and the
18         claimant's only complaint was erectile dysfunction for which he
19         requested and was prescribed Viagra.  (Exhibit 22-F, pp. 1, 2 [AR
20         244-45]).  [¶]  In reviewing the treating records, I do note that on June
21         22, 2004[,] Dr. Small completed a form for the claimant indicating he
22         was eligible for a disabled parking placard due to degenerative disc
23         disease.  (Exhibit 13-F, p. 2 [AR 187]).  She did not, however,
24         provide any specific information regarding the claimant's actual
25         functional limitations, making this statement of limited value.  I also
26         note that on March 7, 2005[,] Dr. Small reported that the claimant

27

28         _____
               [5]The March 6, 2006 report, which plaintiff contends was ignored by the ALJ, twice
           appears in the record at AR 220 and AR 284.

                                      11

1   should be continued on disability due to his chronic progressive

2   disorder and would be disabled for greater than a year because of this

3   disorder, which she acknowledged had not yet been diagnosed.

4   (Exhibit 12-F, p. 5 [AR 169]).  Her vague statement regarding

5   disability, while acknowledged, is not entitled to significant weight as

6   it is not accompanied by any explanation as to the claimant's actual

7   functional abilities.  Rather, after giving careful consideration to all of

8   the evidence, I find it entirely reasonable to give weight to Dr.

9   Moore's assessment as it reflects appropriate accommodation of the

10   claimant's symptoms and functional limitations and is not

11   inconsistent with the claimant's treating records and with the

12   objective and diagnostic findings.

13   (AR 19).  The foregoing record reflects that the ALJ considered and properly

14   rejected Dr. Small's opinion.

15      First, despite plaintiff's contention to the contrary, the ALJ expressly

16   recognized that Dr. Small had diagnosed plaintiff with cerebral palsy, noting that

17   it was "stable," and expressly referred to the March, 6, 2006 report in issue.  (AR

18   19) (citing Exhibit 23-F p. 1 [AR 284]).  Indeed, the ALJ referenced the diagnosis

19   of cerebral palsy in concluding that plaintiff had severe impairments of the

20   neurological and musculoskeletal systems.  (AR 15).  Dr. Moore, whose opinion

21   the ALJ adopted, likewise noted the diagnosis of cerebral palsy.  (AR 234).[6]

22      Second, the ALJ offered a specific and legitimate reason to reject Dr.

23   Small's ultimate opinion that plaintiff was disabled and could not work.

24   Specifically, the ALJ discounted Dr. Small's conclusion that plaintiff was disabled

25

26      [6]Plaintiff, citing WebMD.com, identifies various symptoms and conditions caused by
    cerebral palsy.  (Plaintiff's Motion at 3-4).  However, the issue before this Court is not whether

27   cerebral palsy can cause functional limitations, but rather, whether the ALJ materially erred in
    rejecting Dr. Small's opinion that plaintiff could not work in favor of Dr. Moore's opinion, that

28   plaintiff's cerebral palsy and other ailments did not cause functional limitations which translated
    into an inability to perform jobs that exist in significant numbers in the national economy.

1  and could not work because Dr. Small did not specify any actual functional

2  limitations.  (AR 19).  An ALJ may properly reject a treating physician's opinion

3  that is conclusory.  See Batson v. Commissioner of Social Security

4  Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242

5  F.3d 1144, 1149 (9th Cir. 2001).

6       Moreover, as defendant notes, the ultimate issue of disability is reserved to

7  the Commissioner, and a conclusory opinion on such ultimate issue is not binding

8  on an ALJ.  See 20 C.F.R. § 404.1527(e)(1), (3); 20 C.F.R. § 416.927(e)(1), (3);

9  Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).

10      In short, the ALJ properly considered Dr. Small's opinions and properly

11 rejected her conclusory opinion that plaintiff was disabled and unable to work in

12 favor of the contrary opinion of Dr. Moore.  Accordingly, a remand or reversal on

13 this basis is not warranted.

14            **B.    Duty to Develop the Record**

15      Plaintiff also alleges that the ALJ failed properly to develop the record

16 regarding Dr. Small's opinion.  (Plaintiff's Motion at 5-6).  Plaintiff contends that

17 the ALJ's determination that Dr, Small's opinion was not entitled to significant

18 weight because it was vague and devoid of any functional limitations was

19 essentially equivalent to a determination that the record was ambiguous or

20 inadequate, thereby triggering the ALJ's obligation to further develop the record.

21 (Plaintiff's Motion at 6).  This Court disagrees and finds the ALJ was not required

22 further to develop the record.

23            **1.    Relevant Law**

24      An ALJ in a social security case has an independent duty fully and fairly to

25 develop the record.  See Tonapetyan, 242 F.3d at 1150 (9th Cir. 2001) (citations

26 omitted); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has

27 special duty fully and fairly to develop record and to assure that claimant's

28 interests are considered).  "An ALJ's duty to develop the record further

1  is triggered only when there is ambiguous evidence or when the record is

2  inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari,

3  276 F.3d 453, 460 (9th Cir. 2001) (citing Tonapetyan, 242 F.3d at 1150). "The

4  ALJ may discharge this duty in several ways, including: subpoenaing the

5  claimant's physicians, submitting questions to the claimant's physicians,

6  continuing the hearing, or keeping the record open after the hearing to allow

7  supplementation of the record." Tonapetyan, 242 F.3d at 1150 (citations omitted).

8  **2.  Analysis**

9  First, the ALJ's duty to develop the record further regarding Dr. Small's

10  opinion as to plaintiff's disability was not triggered.  The ALJ's opinion that Dr.

11  Small's "vague statement regarding disability, while acknowledged, is not entitled

12  to significant weight as it is not accompanied by any explanation as to the

13  claimant's actual functional abilities" is not an indication that the record was

14  ambiguous or inadequate.  Rather, the ALJ reasonably inferred that Dr. Small's

15  conclusory statement of disability, without any support from the objective medical

16  evidence regarding the degree of specific functional limitations which would

17  support such a conclusion, should be rejected in favor of Dr. Moore's specific

18  opinions regarding plaintiff's actual functional limitations.  There was ample

19  evidence in the record regarding plaintiff's physical impairments, such as Dr.

20  Small's treatment notes, the findings of Drs. Moore and Hannani, and the clinic

21  notes from the Spine Clinic.  Therefore, the record was adequate to allow for a

22  proper evaluation of Dr. Small's opinion and plaintiff's physical impairments and

23  limitations.

24  Second, even assuming the ALJ's duty further to develop the record was

25  triggered, the ALJ adequately discharged such duty.  As noted above, the ALJ

26  twice supplemented the record.  After the first hearing, the ALJ ordered further

27  consultative neurological and psychiatric examinations, and set a further hearing

28  date.  (AR 13, 307).  After the second hearing, the ALJ again supplemented the

record with a clarification from Dr. Moore, and thereafter afforded plaintiff an opportunity to himself further supplement the record.  (AR 108-11).  Plaintiff did not do so.  As plaintiff was afforded, and did not avail himself of an opportunity to supplement the record himself, the ALJ adequately discharged any duty he had to supplement the record further.

Based on the foregoing, a reversal or remand is not warranted on this claim.

## C.   Hypothetical Question to Vocational Expert

Plaintiff alleges that a reversal or remand is appropriate because the ALJ improperly relied upon the supplemental information provided by Dr. Moore in making a vocational determination.  (Plaintiff's Motion at 7-10).  This claim lacks merit.

### 1.   Pertinent Facts

At the second administrative hearing, a vocational expert testified regarding plaintiff's ability to perform his past relevant work and other work.  (AR 312-16).[7]

---

[7]At the second administrative hearing, the ALJ engaged in the following discussion with the vocational expert:

Q:   I'd like you to consider a person of the [plaintiff]'s vocational background, his age, education and work experience.  And consider the assessment that was made by a neurologist. . . .  At the current time the [plaintiff] is able to stand and to walk two to four hours of an eight hour day without an assisted device in 30 minute intervals.  He can sit in unrestricted manner.  He can only occasionally bend and stoop.  Should not operate foot controls.  Should not climb, balance or work at unprotected heights.  He can occasionally push and pull.  Would have slight difficulty operating hand controls and using tools.  He can perform occasional to frequent gripping movements.  He can perform occasional to frequent distal, fine, coordinated movements.  He can intermittently lift and carry 25 pounds.  And no more frequently lift and carry 10 pounds.  And there are no mental limits.  That would describe work at what, if any, exertional level?

A:   Limited light.

Q:   And both prior jobs are medium, so he could not perform past relevant work?

A:   Correct. . . .

(continued...)

15

The vocational expert opined that a person with the residual functional capacity assessed for plaintiff by Dr. Moore and adopted by the ALJ, including the ability to perform occasional to frequent gripping movements and occasional to frequent distal, fine, coordinated movements, could perform jobs that exist in significant numbers in the national economy as an inspector/hand packager, cashier and ticket seller.  Plaintiff's attorney then inquired about the meaning of "occasional to frequent."  (AR 313-15).  The vocational expert responded:

> Well, it would, I think, be one of two things.  It would either, you know, be something that's arranged in between.  Or it would mean that some portion of the day, the work might be occasional, but it might reach a level of frequent, which would be two-thirds of the day at times.

(AR 315).  Plaintiff's attorney inquired as to whether the vocational expert was sure.  (AR 315).  The vocational expert responded:  "I don't know for sure how the doctor meant that, but that would be my understandings."  (AR 315).

The ALJ indicated that he would seek clarification from Dr. Moore, and he would provide plaintiff with such clarification.  (AR 315).  The ALJ then sought clarification from Dr. Moore regarding his opinion that plaintiff could perform

///

---

[7](...continued)

Q:    Is there any kind of unskilled, entry-level work that might be performed within this assessment?

A:    There would be work as an inspector and hand packager, which is light, unskilled SVP 2.  I would erode the number of these jobs by 50 percent, leaving 500 regionally and 9,500 nationally. . . .  There would be work as cashier II.  That work is light, unskilled, SVP 2.  I would erode the number of those jobs by 50 percent, which would leave 2,500 regionally and in excess of 50,000 nationally. . . .  There would be work as a ticket seller or ticket taker which is light, unskilled, SVP 2.  Again eroding by 50 percent would leave 500 regionally, and 5,800 nationally.

(AR 313-14).

occasional to frequent gripping and fine distal movements of the fingers.   (AR 314-16, 108).  As noted above, Dr. Moore responded:

> As it relates to further clarification of these terms, if the claimant were required to use gripping for performing activities such as using pliers or screwdrivers, he would be able to do this on an occasional basis, as this would require relatively strong gripping.  On the other hand, the claimant could frequently do such things as handle money, where gripping with full strength would not be required.  As it relates to fine manipulation, the claimant would have difficulty doing such things as word processing, where it would be important to type on a relatively continuous basis.  On the other hand, he would be able to do such things as intermittently operate a mouse or keyboard, where speed is not of the essence.  [¶]  As it relates to a position such as a packager, this might prove difficult to the claimant, as forceful gripping would be required.  On the other hand, he likely would be able to operate a cash register, with a frequency required by a cashier, or do such things as punch out tickets and swipe credit cards, as would be required by a ticket seller or taker.

(AR 108).

The ALJ advised plaintiff that the additional evidence would be part of the record, and afforded plaintiff an opportunity to submit a written response, to supplement the record and to seek a further hearing.  (AR 16-17, 108-11).  Plaintiff did not do so.

Based upon the testimony of the vocational expert and Dr. Moore's clarification, the ALJ determined that there are jobs that exist in significant numbers in the national economy that plaintiff could perform, such as cashier and ticket seller.  (AR 313-14).

///

17

### 2.   Pertinent Law

A hypothetical question posed by an ALJ to a vocational expert must set out all the limitations and restrictions of the particular claimant.  Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended (1997) (citing Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995)); Embrey, 849 F.2d at 422 ("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . .") (emphasis in original; citation omitted).  However, an ALJ's hypothetical question need not include limitations not supported by substantial evidence in the record.  Osenbrock, 240 F.3d at 1163-64 (citation omitted).

### 3.   Analysis

Plaintiff's contention that the ALJ improperly relied upon Dr. Moore's clarification is without merit.

First, the ALJ posed a complete hypothetical question containing all of plaintiff's relevant limitations to the vocational expert at the second  hearing.  (AR 312-13).

Second, both plaintiff's attorney and the vocational expert suggested that the ALJ seek further clarification from Dr. Moore regarding the terms in question.

Third, plaintiff did not object in any way to Dr. Moore's clarification or seek a further hearing, even when afforded an opportunity to do so.

Finally, Dr. Moore did not opine as to whether jobs existed in a significant number in the national economy, but rather, he provided the ALJ with clarification as to which of the jobs identified by the vocational expert that plaintiff could perform given his limitations.

The ALJ did not err in providing the vocational expert with an incomplete hypothetical or in relying on Dr. Moore's clarification in determining plaintiff could perform a significant number of jobs in the national economy.

Accordingly, a remand or reversal on this basis is not warranted.

18

**V.     CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  October 26, 2009

_____
                                    /s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

19